**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DEMETRIUS MORTON,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **COMPLAINT** |
| | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TEAMSTERS LOCAL 710,** | ) | |
| **TEAMSTERS JOINT COUNCIL 25,** | ) | |
| **JOHN T. COLI** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## COMPLAINT

NOW COMES the Plaintiff, DEMETRIUS MORTON, by and through his attorneys, Gainsberg Law, P.C., complaining of the Defendants TEAMSTERS LOCAL 710 ("Local 710"), TEAMSTERS JOINT COUNCIL 25 ("Joint Council 25") and JOHN T. COLI, who brings this lawsuit on his own behalf and as a derivative action to enforce the rights of the members of TEAMSTERS LOCAL 710, TEAMSTERS JOINT COUNCIL 25 and the INTERNATIONAL BROTHERHOOD OF TEAMSTERS ("IBT"), all of which are unincorporated associations, pursuant to Federal Rule of Civil Procedure 23.1 and states as follows:

## NATURE OF CASE

1.      This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendants' unlawful and discriminatory workplace actions against Plaintiff.

2.      Plaintiff seeks redress for the workplace harassment, disparate treatment and discharge from his employment with Local 710 and attempted termination of his Teamster union

1

membership motivated by his race and color in violation of the Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

    **3.**    Plaintiff additionally seeks redress for his discharge under Illinois retaliatory discharge common law and the Labor-Management Relations Disclosure Act of 1959, as amended ("LMRDA") 29 USC § 411, as Plaintiff was terminated in retaliation for his complaints to IBT Representative Tom Cornelius regarding the unlawful and unconstitutional conduct of the Local 710 Comptroller and John T. Coli and as part of the Defendants' scheme to suppress dissent to the enrich the leadership of Joint Council 25 at the expense of Teamsters Local 710.

## JURISDICTION AND VENUE

    4.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981 and the LMRDA.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under Illinois common law pursuant to 28 U.S.C. § 1367(a).

    5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE HISTORY

    6.    Prior to the filing of this Complaint, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII").  Plaintiff's EEOC charge arises out of many of the same facts alleged herein that pertain to his Section 1981 retaliation. Plaintiff has also filed a charge of retaliation with the EEOC regarding his discharge which was also motivated in part due to his defense of Roger Kelley in the face of John T. Coli's

discrimination due to Roger Kelley's Americans with Disability Act ("ADA") qualifying liver disease and exercise of Family Medical Leave Act ("FMLA") rights.

7.     When the EEOC completes its investigation of the charge and issues Plaintiff a notice of right to sue, Plaintiff will seek leave to amend this Complaint to add claims that Defendants violated Title VII, the ADA and FMLA as well.

8.     Prior to the filing of this Complaint Plaintiff filed an internal appeal with the IBT regarding his discharge.  Per Article XX of the IBT constitution, this appeal has been put on hold until the resolution of all litigation.  Due to the futility of the internal appeals process, this case has satisfied the LMRDA exhaustion of internal union remedies pre-suit requirement.

9.     Any and all other prerequisites to the filing of this suit have been met.

## II. PARTIES

### Plaintiff Demetrius Morton

10.     At all times relevant to this Complaint, Plaintiff has been a dues paying Teamster and member of Defendant Local 710, affiliated with Defendant Joint Council 25 and the IBT.

11.     Plaintiff is a resident of Cook County, Illinois.  At all relevant times, Plaintiff has been resident of the State of Illinois and this judicial district and has met the definition of "employee" under all applicable statutes.

### Defendant Teamsters Local 710

12.     Teamsters Local 710 is a labor organization as defined in Title 29 USC Section 402(i) and (j).

13.     Teamsters Local 710 was a founding local of the IBT and represents more than 12,000 members employed in various industries across the Midwest.

14.     At all relevant, Defendant Joint Council 25 was a covered "employer" or "joint-employer" under all relevant statutes.

15.     Teamsters Local 710 has an office at 9000 West 187th Street Mokena, IL 60448.

16.     Teamsters Local 710 was placed under Trusteeship in 2014 due to the "financial impropriety" of the previous union administration as documented in the Independent Review Board report.

### Defendant Teamsters Joint Council 25

17.     Teamsters Joint Council 25 is a labor organization as defined in Title 29 USC Section 402(i) and (j).

18.     Teamsters Joint Council 25 is comprised of subordinate bodies entitled local unions.

19.     Teamsters Local Unions 26, 50, 142, 179, 279, 301, 325, 330, 371, 458, 525, 627, 673, 700, 703, 705, 710, 722, 727, 731, 734, 743, 754, 777, 781, 786 and 916.

20.     At all relevant, Defendant Joint Council 25 was a covered "employer" or "joint-employer" under all relevant statutes.

21.     Teamsters Joint Council 25 has an office at 1300 W Higgins Rd # 220, Park Ridge, IL 60068.

### Defendant John T. Coli

22.     At all times relevant to this Complaint, Defendant John T. Coli has been the President of Defendant Joint Council 25 and the Trustee of Defendant Teamsters Local 710.

23.     At all relevant times, Defendant John T. Coli directly participated in the discriminatory and otherwise unlawful employment decisions and actions against Plaintiff, and was a covered "employer" and/or an "aider" or "abettor" under all relevant statutes.

24.     Defendant John T. Coli is a resident of this judicial district.

## III. STATEMENT OF FACTS

25.     Plaintiff is a black, African-American.

26.     Plaintiff first became a member of the International Brotherhood of Teamsters, as a member of Teamsters Local 744 in 1996.

27.     Plaintiff was elected Business Agent of Local 744 in 1996 and when Local 744 merged with Defendant Teamsters Local 710 in 2010, Plaintiff was retained as a Business Agent until his removal from office in 2016.

28.     As a Business Agent, Plaintiff travelled to assigned companies to provide representation for Defendant Local 710 members.  This included negotiating contracts, negotiating resolving disputes and grievances with management in person and on grievance committees, preparing grievances for arbitration, organizing membership for collective action and keeping the membership informed and involved in the activity of the Local.

29.     Plaintiff first became a member of the Teamsters National Black Caucus in 1996, an independent organization affiliated with the IBT and sits on the Executive Board of the Teamsters National Black Caucus.

## TRUSTEESHIP AND DOMINATION OF LOCAL 710 IN THE INTEREST OF JOINT COUNCIL AND JOHN T. COLI

30.     On July 30, 2014, the IBT President James P. Hoffa Jr. appointed Defendant John T. Coli, as President of Defendant Joint Council 25, to personally manage the affairs of Defendant Local 710 as Trustee due to the financial improprieties of the previous union administration.

31.     Defendant John T. Coli and Brian Rainville, Executive Director of Defendant Joint Council 25 personally oversaw the most vital tasks of Defendant Local 710, including

representation and bargaining and installed other Defendant Joint Council 25 staff into managerial positions to direct the rest of the affairs of Defendant Local 710 in the interests of Defendant Joint Council 25.

32.     Defendant Joint Council 25 Organizing Directors Mike DiGrazia and Paul DiGrazia assumed control of Defendant Local 710 organizing and ensured it aligned with Defendant Joint Council 25 objectives and assigned Defendant Joint Council 25 organizers Eduardo Ferrerra, Matthew Emmerick and Jennifer Schaefer to Defendant Local 710.

33.     Defendant Joint Council 25 Communications Director William Petty was assigned to direct Defendant Local 710 communications.

34.     Other Defendant Joint Council 25 and Teamsters Local 727 staff were placed directly on the Defendant Local 710 payroll for unknown duties as reported in Defendant Local 710's LM-2 report.

35.     Defendant John T. Coli assigned Rupa Baskaran as in-house attorney for Defendant Local 710 from his own Local 727.

36.     Defendant Joint Council 25 for the first time required Defendant Local 710 staff to campaign for Defendant Joint Council 25 endorsed political candidates.

37.     Defendant John T. Coli and Brian Rainville controlled all hiring and firing decisions at Defendant Local 710 during the Trusteeship and directed all personnel policies, including the bonuses equivalent to a month's worth of salary to all staff at the end of 2015.

38.     Immediately upon installation as Local 710 Trustee, Defendant John T. Coli began administering Local 710 for his own personal and pecuniary gain and in the benefit of the Joint Council 25 to the detriment of Local 710 members.

39.     Upon installation as Defendant Local 710 Trustee, Defendant John T. Coli fired the well-known and prestigious labor law firm, Asher, Gittler & D'Alba, Ltd. that had decades of experience and knowledge assisting in bargaining Defendant Local 710.

40.     Defendant John T. Coli instead retained the law firm Illinois Advocates at an equivalent or greater cost to the membership of Defendant Local 710.

41.     This law firm was founded by Defendant John T. Coli's son Joseph Coli immediately after his graduation from law school in 2012 and is also the law firm providing representation to Defendant Joint Council 25.

42.     Prior to the Trusteeship, Defendant Joint Council 25 had to pay to store its vehicles, including two semi-trailers used for Defendant Joint Council 25 purposes.

43.     Defendant Joint Council 25 also had its own vehicles to transport Defendant John T. Coli and Defendant Joint Council 25 Organizing Director Mike DiGrazia.

44.     After the Trusteeship, Defendant Joint Council 25 cancelled the paid parking agreements and parked its semi-trailers on Defendant Local 710 property without payment and took exclusive use of Defendant Local 710 vehicles for Defendant John T. Coli and Defendant Joint Council 25 Organizing Director Mike DiGrazia.

45.     Defendant Local 710 continued to pay for the gas and cleaning expenses of the vehicles while exclusively used by Defendant Joint Council 25.

## UNCONSTITUTIONAL AND UNLAWFUL TRANSFER OF MEMBERSHIP FROM LOCAL 710 TO LOCALS OF JOINT COUNCIL LEADERSHIP

46.     Since the beginning of the Trusteeship, Defendant John T. Coli has transferred almost 6,000 dues paying members from Defendant Local 710 to his home local and other Teamster locals, as disclosed on the LM-2 disclosure forms.

47.     On or about April 2015, Defendant Local 710 membership in the soft drink and beverage industry were transferred to Defendant John T. Coli's Teamsters Local 727 ("Local 727"), worth about one million dollars of dues income per year and included employers such as Coca Cola, Pepsi and Snapple.

48.     In order to facilitate the mass transfer of membership into his home local, Defendant John T. Coli secured employer cooperation through the forgiveness of months' worth of back dues owed by employers to Defendant Local 710.

49.     On or about August, 2015, Defendant John T. Coli attempted to transfer Local 710 members in the food and grocery industry to Teamsters Local 703, controlled by Thomas Stiede, Vice-President of Joint Council 25.

50.     When this information was discovered by the Local 710 membership a protest campaign begun that lead to letters and phone calls to the IBT to stop the wholesale dismantling of Local 710 into the locals of Defendant John T. Coli and his allies at Joint Council.

51.     The outcry from the Local 710 membership forced Defendant John T. Coli to cease his efforts to transfer the Local 710 members in the food and grocery industry.

52.     Defendant John T. Coli thereafter issued a letter denying any intention of transferring members in the food and grocery industry, blaming "agitators" for the "rumors" about the impending transfer.

## PLAINTIFF REPORTS UNCONSTITUTIONAL AND UNLAWFUL ACTIONS BY JOHN T. COLI TO IBT REPRESENTATIVE

53.     On or about November 2015, Plaintiff reported to Tom Cornelius that he had continued to perform representation work for Local 710 members transferred to Local 727 in April 2015, even though the dues money from said members was paid to Local 727 and that this was an unconstitutional appropriation of Local 710 resources.

54.     On or about November 2015, Plaintiff reported to Tom Cornelius that Local 727 had received back membership dues income from companies and members that was incurred by membership prior to the April 2015 transfer and that was rightfully owed to Defendant Local 710 and not Local 727.  Plaintiff also reported that it was unconstitutional to waive dues for Local 710 members transferred to Local 727 and unconstitutional for Defendant Local 710 to have paid the per-capita dues for Local 710 members for previous years for Local 727 members for various organizations, such as the Chicago Federation of Labor.

55.     On or about March 2016, Plaintiff repeated these reports again to Tom Cornelius, only one month before his termination.

## PLAINTIFF REPORTS UNCONSTITUTIONAL AND UNLAWFUL ACTIONS BY JOHN T. COLI'S APPOINTED COMPTROLLER OF LOCAL 710

56.     On or about April 6, 2015, Krista Grant was hired as the Comptroller of Defendant Local 710.

57.     Immediately after her hire, Comptroller Grant violated the accrued leave policies imposed by Defendant John T. Coli on all employees of Defendant Local 710 and then began falsifying her records hide her violations of the accrued leave policy.

58.     In early 2016, Plaintiff was made aware of Comptroller Grant's stealing of vacation time by Defendant Local 710 Titan Operator Megan Kelley.

59.     On or about March 2016, Plaintiff demanded Tom Cornelius do something about Comptroller Grant as stealing from the Teamsters was unlawful and a violation of the IBT constitution.

60.     On or about March 7, 2016, Megan Kelley was told by IBT Representative Thomas Cornelius to send the dates she had recorded Comptroller Grant taking leave and was expressly instructed not to send the dates via her Teamsters work email.

61.    On or about March 8, 2016, Megan Kelley told IBT Representative Thomas Conelias that she was in possession of the falsified paid time off log of Comptroller Grant proving she falsified her own vacation timekeeping to re-use vacation days.

62.    On or about March 8, 2016, Megan Kelley also sent IBT Representative Thomas Cornelias the dates she had recorded Comptroller Grant using paid leave.

63.    On March 9, 2016, Megan Kelley was called into a meeting at Local 710 where Defendant John T. Coli informed her that she was discharged from her employment with Defendant Teamsters Local 710.

64.    Defendant John T. Coli kept Comptroller Grant because as the Defendant Local 710 Comptroller she has been directly involved in the recordkeeping related to the pilfering of Defendant Local 710 for the benefit of the Joint Council 25 and its Executive Board

## TRUSTEESHIP TARGETS PLAINTIFF'S AFFILIATION WITH TEAMSTERS NATIONAL BLACK CAUCUS

65.    In early 2015 Plaintiff submitted a request for funding and time-off to attend a Teamsters National Black Caucus Executive Board meeting in Florida in February 2015.

66.    This request had always been previously approved and Teamster locals in financial difficulty typically approved time-off for attendees so they would not need to use personal vacation time.

67.    Plaintiff was informed two weeks prior to the event that there was no funding available to send him.  Plaintiff requested to be permitted time-off to attend and this request was denied and Plaintiff had to take his personal vacation days to attend the event.

68.    In early 2015 Plaintiff also submitted his request for funding and time-off to attend a Teamsters National Black Caucus general membership meeting in Nevada in August 2015.  This request had always been previously approved.

69.     Plaintiff did not receive a response to this request until July or August 2015 and was told no funding would be available and Plaintiff would again have to use personal vacation days to attend.

70.     Around the same time Plaintiff's request was denied, Defendant Local 710 made funding available for paid time off, plane tickets, hotel, late registration fee payment and per-diem meal expenses for four white female members with no formal leadership positions in the Teamsters Women's Caucus to attend the August 2015 Teamsters Women's Caucus meeting in Massachusetts.

71.     In the summer of 2015 Plaintiff was directly ordered by Gary Abrahamson, who was delegated day-to-day management of Business Agents by Defendant John T. Coli at that time, to stop distributing business cards with his personal cell-phone to membership because it included an affiliation with the Teamsters National Black Caucus, and was incorrectly told that this was consistent with other Teamster locals such as Teamsters Local 700 also prohibited distribution of business cards that had an affiliation with the Teamsters National Black Caucus.

## TRUSTEESHIP BEGINS REMOVING PLAINTIFF'S JOB RESPONSIBILITIES AND DISTRIBUTING THEM TO WHITE AND LATINO BUSINESS AGENTS

72.     Throughout 2015 and 2016 Plaintiff's representation and bargaining responsibilities were removed by the Trusteeship and were vested primarily in White and Latino business agents with less experience and worse work performance, but who were trusted by John Coli not to 'agitate' the black membership regarding Coli's misappropriation of assets.

73.     Beginning in mid-2015 and continuing until the termination of Plaintiff's employment, Plaintiff reporting of scheduling and hours received extra scrutiny not given to other non-black/African American business agents.

74.     Plaintiff was required to turn in weekly schedules, immediately report any changes in my schedule and report back to the union local office after visiting site visits whereas a number of white business agents were not.

75.     Plaintiff was not given an explanation for these additional requirements and was told by Defendant John T. Coli that if he disagreed, he could leave the employment of Teamsters Local 710.

## JOHN T. COLI ENGAGES IN UNLAWFUL AND UNCONSTITUTIONAL INTERFERENCE WITH LOCAL 710 ELECTION AND ENGAGES IN SYSTEMIC SUPPRESSION OF DISSENT AT LOCAL 710

76.     In early January 2015, the business agents (who are members) of Defendant Local 710 met to pick an election slate to run for the leadership of Defendant Local 710 once Defendant Local 710 left Trusteeship and to act as delegates to elect the leadership of Joint Council and the IBT.

77.     At this meeting, due to his popularity among the membership, his independence from the previous administration and reputation for fighting for equality at the workplace, Plaintiff was selected to the slate's choice for Vice-President.

78.     The other business agents on the slate elected by the business agents at the early January 2015 meeting included Mike Rossow, Ron Dillion, Roger Kelley.

79.     On June 3rd, 2015, Defendant John T. Coli held a meeting during business hours to address the Defendant Local 710 business agents, John T. Coli announced that the Defendant Local 710 business agents would be voting again for an election slate to run for Local 710 leadership.

80.     Thereafter Defendant John T. Coli called a vote and the slate that was elected at the meeting included Defendant Local 710 business agents Bernie Sherlock (as President), Gary Abraham, Del Schaefer and Ron Dillion.

81.     Prior to the June 3rd, 2015 meeting Defendant John T. Coli had private individual meetings informing other business agents that Plaintiff would not be running for Vice-President of Local 710 and Roger Kelley was not to run for President of Local 710 or else Local 710 would be dissolved and have to have its membership transferred into Joint Council 25 locals.

82.     The business agents who were not approached by Defendant John T. Coli before the June 3rd, 2015, meeting, including Plaintiff, Roger Kelley and Mike Rossow, were incidentally the only business agents who did not vote for the John T. Coli's new slate.

83.     Defendant John T. Coli's preferred slate won the vote and Plaintiff was removed as a candidate for Vice-President and Roger Kelley was removed as a candidate for President of Local 710 in favor of Defendant John T. Coli's choices.

84.     By late June or early July 2015, Defendant John T. Coli terminated Mike Rossow as an elected Local 710 business agent.

85.     On March 13. 2016, Defendant John T. Coli terminated Roger Kelley and his daughter Megan Kelley due to "financial difficult" at Local 710.

## DEFENDANT JOHN T. COLI DISCHARGES PLAINTIFF

86.     In February 2015, Defendant John T. Coli informed Plaintiff that he was trying to diversify the local, and said Plaintiff's job was "safe" as Plaintiff was the only black business agent at the local and that he needed to hire more "Hispanics and women" in response to Plaintiff's complaints about removal of his work responsibilities.

87.     In March 2016, prior to Plaintiff's termination, Defendant John T. Coli hired Aisha N. Hurston, an African American woman with only one year of experience as a Business Agent and again told Plaintiff he was trying to diversify the local and hire more "Hispanics and women" in response to Plaintiff's concerns about his job after Defendant John T. Coli fired Roger Kelley.

88.     On April 20, 2016, Defendant John T. Coli fired Plaintiff on April 20, 2016 due to "financial difficulty" at Local 710.

89.     Plaintiff was replaced by Mike Ramirez (Latino), who was hired at an equivalent salary and had many years less experience as a Business Agent.

**COUNT I**
**All Defendants**
**RACIAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981**

90.     Plaintiff re-alleges and incorporates by reference herein Paragraphs 1-89 of this Complaint.

91.     At all times relevant to this Complaint, Defendant John T. Coli, as Trustee of Local 710, ignored the constitution and by-laws of the Teamsters and operated Defendant Local 710 in his own personal interest and in the interest of Defendant Joint Council 25 and committed the discriminatory conduct described above in his own personal interest and in the interest of Defendant Joint Council 25.

92.     Defendants' disparate treatment and discharge was motivated and proximately caused by Defendants' racial animus against Plaintiff and was in violation of the rights of Plaintiff afforded to him by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

93.     By the conduct described above, Defendants intentionally deprived the Plaintiff of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants, in violation of 42 U.S.C. §1981.

94.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages, to injunctive and equitable monetary relief and other just and proper relief.

95.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to humiliation, embarrassment, stress and anxiety, and emotional pain and suffering for which she is entitled to an award of monetary damages, injunctive and equitable monetary relief and other just and proper relief.

96.     Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

97.     To remedy the violations of the rights of the Plaintiff secured by Section 1981, Plaintiff requests that the Court award them the relief prayed for below.

## COUNT II
## Defendants
## Retaliatory Discharge – Illinois Common Law

98. Plaintiff re-alleges and incorporates by reference herein Paragraphs 1-97 of this Complaint.

99. At all times relevant to this Complaint, Defendant Joint Council 25 was a joint employer with Defendant Local 710 under Illinois law.

100. Comptroller Grant's falsification of records and defrauding paid leave benefits from Teamsters Local 710 constituted an unlawful conversion of funds from Teamsters Local 710.

101. Comptroller Grant's falsification of leave records for her personal financial benefit also constituted an unlawful breach of her fiduciary duty owed to Teamsters Local 710 arising from her position as the union's Comptroller.

102. The Labor Management Reporting and Disclosure Act, 29 USC 431(b), requires that unions accurately report the following to the U.S. Secretary of Labor:

> 29 USC 431(b) Every labor organization shall file annually with the Secretary a financial report signed by its president and treasurer or corresponding principal officers containing the following information in such detail as may be necessary accurately to disclose its financial condition and operations for its preceding fiscal year-
> […]
>
>> (2) salary, allowances, and other direct or indirect disbursements (including reimbursed expenses) to each officer **and also to each employee who, during such fiscal year, received more than $10,000 in the aggregate from such labor organization** and any other labor organization affiliated with it or with which it is affiliated, or which is affiliated with the same national or international labor organization;
>> […] [Emphasis Added]

103. The paid leave logs used by Teamsters Local 710 employees are the primary documents used to verify employee paid leave usage reported as a fringe benefit to the Secretary of Labor pursuant to 29 USC 431(b).

104.     Comptroller Grant's falsification of her leave records would lead to falsified reporting of her total benefits paid by Teamsters Local 710 in violation of the clear public policy requiring honest and accurate disclosure of union staff benefits as articulated in 29 USC 431(b).

105.     John T. Coli's decision to forgive back owed dues for Local 710 membership transferred to home Local 727 violated the constitution of the International Brotherhood of Teamsters as no per capita tax was paid on the dues to the IBT.

106.     The forgiveness of back owed dues owed to Local 710 constituted conversion of Local 710 resources to Local 727 as it was an incentive to companies to accept the transfer of membership to Local 727 and thereby constituted an effective transfer of assets from Local 710 to Local 727.  Further, this dues forgiveness was unlawful under the LMRDA as it should have been reported on Local 710's applicable LM-2 as a transfer of assets but was not.

107.     The other re-appropriation of Local 710 assets in the interest of Defendant Joint Council 25, including but limited to free parking of Joint Council 25 semi-trailers on Local 710 property, use of Local 710 vehicles for Joint Council 25 purposes, assignment of Local 710 business agents, including Plaintiff, to continue to service Local 710 membership that was transferred to Local 727 yet paid exclusive dues to Local 727, similarly constituted common law conversion and violated reporting requirements for transfer of assets according to the LMRDA.

108.     Plaintiff's termination was motivated and proximately caused by an animus against him for her reporting of Comptroller Grant's falsification of records and conversion of unions funds in order to conceal this embarrassing misconduct at a Local that was already under Trusteeship for financial impropriety and preparing to elect delegates sympathetic to re-electing IBT President James P. Hoffa and a new leadership sympathetic to re-electing Teamsters Joint Council 25 President John T. Coli.

109.     Plaintiff Demetrius Morton's retaliatory discharge from Defendant Teamsters Local 710 violated the public policy of the State of Illinois that protects employees reporting the breach of fiduciary duties and conversion of employer assets to their superiors in good faith. Mackie v. Vaughan Chapter-Paralyzed Veterans of America, Inc., 820 N.E.2d 1042 (Ill. App. Ct. 1st Dist. 2004) (Holding retaliatory discharge may be pled under a "citizen crime-fighter" approach where employee was terminated for reporting in good-faith to a superior the conversion of the employer's donor email list for personal use by another employee).

110.     Plaintiff's retaliatory discharge also violated the clear public policy of the United States as articulated in 29 USC 431 requiring unions to provide honest and accurate disclosure of union expenditures, transfers of assets and staff benefits.

111.     As a direct and proximate result of the Defendants' retaliatory discharge of the Plaintiff has suffered damages, including, without limitation, lost income and benefits, emotional distress, damage to her reputation, and loss of employment since April 20, 2016.

112.     Plaintiff obtained his personnel file through a Personnel Records Request following his discharge and there is no documentation of any kind to support her termination.

113.     Defendants' retaliatory conduct was willful, wanton, reckless and/or deliberate which justifies imposition of punitive damages.

### COUNT III
### All Defendants
### Violation of Section 101(a)(1)/(2) and 609 of the LMRDA, 29 USC 411(a)(1)/(2)
### PLAINTIFF'S DISCHARGE AND REMOVAL FROM RETAINED ELECTED OFFICE AND INTERFERENCE WITH HIS INDEPENDENT CANDIDACY FOR LOCAL 710 PRESIDENT WAS PART OF A PURPOSEFUL AND DELIBERATE ATTEMPT TO SUPPRESS DISSENT WITHIN LOCAL 710

114.     Plaintiff re-alleges and incorporates by reference herein Paragraphs 1-113 of this Complaint.

115.    Defendants Local 710, Joint Council 25 and Defendant John T. Coli, intentionally and in bad-faith removed Plaintiff from his elected position as a retained elected business agent, prevented him from  and have attempted to terminate his Teamster union membership in retaliation for his exercise of protected free speech and protected right to run as an independent for President of Local 710 as guaranteed by Section 101(a)(1)/(2), and 609 of the LMRDA, 29 USC 411(a)(1)/(2) and as part of a purposeful and deliberate attempt to suppress dissent within Local 710 when Plaintiff protested against Defendant John T. Coli's extraction of members and resources from Local 710.

116.    Plaintiff is entitled to permanent injunctive relief, reinstatement, compensatory and punitive damages, attorney's fees and costs pursuant to Section 101(a)(1)/(2) and 609 of the LMRDA, 29 USC 411(a)(1) and (a)(2) to enjoin and redress Defendants' purposeful and concerted violation of his union free speech rights and his right to run for union office.

## PRAYER FOR RELIEF

117.    WHEREFORE, Plaintiff prays that the Court grant relief on his First, Second, Third Counts as specified below.

118.    Plaintiff prays that the Court issue a declaratory judgment against Defendant John T. Coli, Defendant Teamsters Local 710 and Defendant Teamsters Joint Council 25 that the Plaintiff's disparate treatment and discharge from his employment with Teamsters Local 710 and attempted termination of his Teamster membership by Defendants violated his rights under Section 1981 and the LMDRA and the Illinois common law as alleged in this Complaint.

119.    As to Count I, Plaintiff prays that the Court enter a preliminary and permanent injunction ordering and requiring that Defendant John T. Coli, Defendant Teamsters Local 710 and Defendant Teamsters Joint Council 25 formulate, institute, adopt and maintain policies and

practices which will provide equal employment opportunities to Plaintiff and other African American employees, and which will to the extent practicable remedy the continuing effects of past discrimination against Plaintiff, and restore him to the employment status and position he would have held and enjoyed but for the unlawful discrimination complained of herein.

120.     As to Count II, Plaintiff prays that the Court enter a preliminary and permanent injunction ordering and requiring that Defendant John T. Coli, Defendant Teamsters Local 710 and Defendant Teamsters Joint Council 25 formulate, institute, adopt and maintain policies and practices which will provide protection from retaliation to Plaintiff and other employees reporting criminal and wrongdoing at Defendant Teamsters Local 710, and which will to the extent practicable remedy the continuing effects of past retaliation against Plaintiff, and restore him to the employment status and position he would have held and enjoyed but for the unlawful retaliation complained of herein.

121.     As to Count III, Plaintiff prays this Court to enter appropriate preliminary and permanent injunctive relief against Defendants John T. Coli, Local 710 and Joint Council 25, jointly and severally, to enjoin his discharge and unlawful removal from retained elected office.

122.     As to all Counts, Plaintiff prays this Court to enter monetary judgment in his favor against Defendants John T. Coli, Local 710 and Joint Council 25, jointly and severally, for equitable monetary relief, compensatory and punitive damages to Plaintiff in an amount to be proven at trial, and reasonable attorney's fees and costs.

123.     As to all Counts, Plaintiff prays that the Court award other such further relief as the Court deems just and proper.

Respectfully submitted,

GAINSBERG LAW, P.C.


By: __/s/ Nicholas Kreitman
        Nicholas Kreitman
        Plaintiff's Attorney


Nicholas Kreitman
Gainsberg Law, P.C.
1 S Dearborn St, 21st Floor
Chicago, Illinois 60603
(312) 600-9585
nick@gainsberglaw.com
Attorney ID #  57962